**CONCERNED WOMEN FOR AMERICA EDUCATION AND LEGAL DEFENSE FOUNDATION, INC. (CWA) and Jolene Cox, Plaintiffs,**

v.

**LAFAYETTE COUNTY AND OXFORD PUBLIC LIBRARY, Defendant.**

No. WC88–98–NB–D.

United States District Court,
N.D. Mississippi, W.D.

Sept. 16, 1988.

Jordan Lorence, Cimron Campbell, Washington, D.C., Wendell R. Bird, Atlanta, Ga., Derrell Doss, Oxford, Miss., for plaintiffs.

S.T. Rayburn, David L. Calder, Oxford, Miss., for defendant.

## MEMORANDUM OPINION

BIGGERS, District Judge.

The court has before it the motion of Concerned Women for America Education and Legal Defense Foundation, Inc. (hereinafter, CWA) and Jolene Cox for a preliminary injunction to require Lafayette County and Oxford Public Library to permit the CWA to hold meetings in the auditorium of the library. Having read the parties' memoranda and considered the evidence presented, the court is in a position to rule on the merits.

### I.

CWA is a women's organization interested in family, political and religious issues. At its chapter meetings, CWA discusses these issues, invites speakers to speak on relevant issues, and prays for the country and people in positions of authority. On June 10, 1988, the local chairperson of the CWA, Jolene Cox, asked the librarian of the Lafayette County and Oxford Public Library (hereinafter, Library) for permission to use the Library auditorium to hold a CWA meeting. The librarian denied the CWA access to the Library auditorium based upon the Library's written auditorium policy. The policy states:

I. The Auditorium of the Oxford branch of the First Regional Library is open for use of groups or organizations of a civic, cultural, or educational character, but not for social gatherings, entertaining, dramatic productions, money-raising, or commercial purposes. It is also not available for meetings for social, political, partisan, or religious purpose, or when in the judgement [sic] of the Director or Branch Librarian any disorder may be likely to occur.

CWA brought this motion to contest the Library's policy and practice and to secure an order allowing CWA access to the Library auditorium.

At the hearing on this motion, the librarian testified that she is the person who decides whether a group requesting the use of the auditorium fits within the library's auditorium guidelines. She said that once she determined a group was not meeting for a religious or political purpose, she granted the group permission to use the auditorium. The librarian has allowed the U.S. Navy recruiters, Oxford Swim Club, Junior Auxiliary, Oxford Garden Club, American Association of University Women, the American Legion and the National Association of Retired Federal Employees to meet in the Library auditorium.

### II.

To secure a preliminary injunction, CWA must demonstrate:

(1) a substantial likelihood of success on the merits;

(2) a substantial threat of irreparable injury if an injunction is not issued;

(3) the threatened injury to CWA outweighs the damage the injunction might cause the library; and

(4) the injunction will not disserve the public interest.

*Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 576 (5th Cir.1974).

■■■ The First Amendment prohibits restriction of speech which is based on the content of the speech. However,

[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities. *Cf. Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 136, 53 L.Ed.2d 629, 97 S.Ct. 2532 (1977). Recognizing that the Government, 'no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated,' *Greer v. Spock*, 424 U.S. 828, 836, 47 L.Ed.2d 505, 96 S.Ct. 1211 (1976), the Court has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes. Accordingly, the extent to which the Government can control access depends on the nature of the relevant forum. Because a principal purpose of traditional public fora is the free exchange of ideas, speakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest. *See Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. [37] at 45, 74 L.Ed.2d 794, 103 S.Ct. 948 [at 955]. Similarly, when the Government has intentionally designated a place or means of communication as a public forum speakers cannot be excluded without a compelling governmental interest.

*Cornelius v. NAACP Legal Defense & Educational Fund*, 473 U.S. 788, 799–800, 105 S.Ct. 3439, 3447–3448, 87 L.Ed.2d 567, 578 (1985). Thus, the public's access to the library is determined by the nature of the forum. The Supreme Court has identified three types of public fora: "... the traditional public forum, the public forum created by government designation, and the nonpublic forum." *Cornelius*, 477 U.S. at 802, 105 S.Ct. at 3449, 87 L.Ed.2d at 580. Traditional public forums, such as public streets and parks, "are those places which 'by long tradition or by government fiat have been devoted to assembly and debate' (cite omitted)." *Id.* Libraries have traditionally been used for individual study, not as a platform for stump speeches. Additionally, the Library's policy restricted the auditorium use to groups which furthered the library's educational and artistic mission. Consequently, the Library auditorium is not a traditional public forum. The question remains whether the Library's acts of allowing non-educational and non-artistic groups such as military recruiters, a swim club, and the American Legion to hold their meetings in the Library has opened a place not traditionally open to assembly and debate so as to require other non-artistic and non-educational groups such as the CWA to have equal access to this publicly owned property. *Id.*

■■■ The Library could restrict access to the auditorium by reasonably classifying those groups who used it or by limiting the discussion in the auditorium to correspond with the library's mission. *Cornelius*, 473 U.S. at 802–804, 105 S.Ct. at 3449–3450, 87 L.Ed.2d at 580–581. The Oxford Public Library allowed the U.S. Navy Recruiters, Oxford Swim Club, the National Association of Retired Federal Employees, and the American Legion to meet in the auditorium. None of these groups are associated with the library in any way. The librarian, who has been given full authority to decide who does and does not possess the eligibility to use the auditorium, testified she decided to allow military recruiters to use the auditorium simply because one of the most popular books at the library deals in military matters. The court is of the opinion that the Library's practice of allowing these diverse groups to use the auditorium has opened this forum to the general public with certain restrictions prohibiting any disruptive type meetings. The purposes of

98

these groups have little to do with the Library's educational and artistic mission. By its practice of opening its auditorium to groups unrelated to the Library's mission, the Library has created a public forum. Having thus created a public forum, even though unwittingly, the Library cannot now restrict access to its auditorium based upon religious content of a group's meetings. *Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981). Since CWA demonstrated that the library denied it access to the auditorium because CWA's meetings had a partially religious tone, CWA has shown it is likely to prevail on the merits.

There is no evidence that CWA's meeting would disrupt or interfere with in any way the general use of the Library by others. On the contrary, except for the praying for our country and its leaders, the CWA's meetings deal with the same type format used by other groups who regularly use the auditorium. The Library complains that it would be forced to allow access to groups which might disrupt the Library if the CWA is allowed access to the auditorium. The Library has the authority to establish reasonable time, place and manner regulations for the use of its auditorium and deny access to groups who would disrupt the general use of the Library. *Widmar*, 454 U.S. at 276, 102 S.Ct. at 277, 70 L.Ed.2d at 451.

The Library's refusal of access because of the content of the speech is an infringement on CWA's First Amendment exercise of free speech in a public forum. This constitutional infringement outweighs any inconvenience the library might incur by allowing CWA access to the auditorium; however, the Court perceives no inconvenience by the meeting of this group of citizens concerned about patriotic and spiritual values. Moreover, an injunction would serve the public interest by insuring unfettered exercise of speech in a public forum. As a result, CWA is entitled to an injunction prohibiting the Library from limiting access to its auditorium based upon the religious content of CWA's meetings.

An order will issue accordingly.

ORDER

In accordance with a memorandum opinion this day issued, it is ORDERED:

That the motion of Concerned Women for America Education and Legal Defense Foundation, Inc. and Jolene Cox for a preliminary injunction to require Lafayette County and Oxford Public Library to permit the plaintiffs to hold meetings in the auditorium of the library is GRANTED.