**DCP FARMS, et al., Plaintiffs,**

v.

**Clayton YEUTTER, Secretary, United States Department of Agriculture, et al., Defendants.**

**No. DC90–194–B–O.**

United States District Court,
N.D. Mississippi,
Delta Division.

Feb. 4, 1991.

John W. Dulaney, Jr., Dulaney & Dulaney, Tunica, Miss., Alan R. Malasky, Salvatore A. Romano, Lewis Rose, Arent Fox Kintner Plotkin & Kahn, Washington, D.C., for plaintiffs.

Robert Crutcher, Asst. U.S. Atty., Oxford, Miss., Michael Knipe, Office of Gen. Counsel, U.S. Dist. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION

BIGGERS, District Judge

This cause comes before the court on the motion of the plaintiffs for declaratory and injunctive relief and the motion of Commodity Credit Corporation for intervention. The court held an evidentiary hearing on December 20, 1990, which the parties agreed to treat as a trial on the merits. After due consideration of the pleadings, the evidence, proposed findings of facts and conclusions of law, and the pre- and post-hearing memoranda of law, the court is prepared to rule.

## USDA PROCEDURE

The United States Department of Agriculture (USDA) and the Agricultural Stabilization and Conservation Service (ASCS) administer the annual federal farm commodity programs pursuant to authority delegated to it by the Secretary of Agriculture. 5 U.S.C. § 301; 16 U.S.C. § 590h(b).

The ASCS has a three-tiered organizational and adjudicative structure, with offices at the county, state and national levels. The county committee (COC), assisted by the county executive director (CED), is responsible for implementing the ASCS administered programs in a particular county. 16 U.S.C. § 590h(b); 7 C.F.R. § 7.21(a). The county committee makes the initial determination regarding a producer's eligibility for payments under the various federal farm programs. If a determination is made that adversely affects a producer, the producer may seek reconsideration of that decision by the county committee. 7 C.F.R. § 780.3. The request for reconsideration begins the ASCS administrative appellate process.

A producer who is not satisfied with the county committee's reconsideration may obtain a review by the state committee (STC). 7 C.F.R. § 780.5. The STC is com-

prised of three to five persons, each of whom is appointed by the Secretary of Agriculture. 7 C.F.R. § 7.4.

Finally, appeals of that decision are taken to the Office of the Deputy Administrator for State and County Operations (DASCO), which conducts an informal hearing.

## FACTS

On April 6, 1989, the Tunica County, Mississippi COC approved the 1989 farm operating plans of DCP Farms and Flowers and Parker Farms, and on April 11, 1989 sent letters to those producers notifying them of approval. Subsequently, on April 14, 1989, the Coahoma County, Mississippi COC approved the 1989 farm operating plan of Flowers Farms.

On December 6, 1990, shortly after a meeting on Capitol Hill between USDA officials and Congressional staffers regarding the organization of the plaintiffs' 1989 farming operation, Representative Jerry Huckaby, Chairman of the Subcommittee on Cotton, Rice, and Sugar, of the House Committee on Agriculture, wrote to Secretary Yeutter specifically regarding the plaintiffs' eligibility for federal farm program benefits. Chairman Huckaby's letter in pertinent part stated:

As the principal sponsor of the legislation which established the new payment eligibility requirements, included in the Omnibus Budget Reconciliation Act of 1987 (P.L. 100–203), I feel strongly that the aforementioned operation violates both the spirit and letter of the law. It was clearly not the intent of Congress that such operations would qualify for such vast sums; if this operation does receive the reported 1.4 million dollars, it will only happen because USDA has failed to implement and enforce the law as intended by Congress.

Chairman Huckaby additionally stated that the plaintiffs' farm operating plans were "obviously designed to circumvent the minimal beneficial interest provision." Huckaby admonished Secretary Yeutter that "[i]f the Department is unable to correct this situation, it is my intention to enact legislation making all trusts and estates ineligible

for payments, beginning retroactively with the 1989 crop year."

Finally, he strongly urged the Secretary to adopt the conclusion that the reorganization of the plaintiffs' farming operations was a scheme or device by stating:

[The reorganization was] clearly designed and carried out to evade the law applicable to payment eligibility.... I am sure that the individuals involved in this operation were aware of the intent of the law. It seems clear that this reorganization was adopted as a device to avoid the payment eligibility law, and I strongly urge you to invoke the scheme or device provision to enforce the payment eligibility law. This provision of the law was adopted for this purpose.

A February, 1990 letter written by William Penn for the signature of Under Secretary for International Affairs and Commodity Programs, Richard Crowder, but signed by Deputy Under Secretary John Campbell, responded to Chairman Huckaby's letter of December 6, 1989. The letter notes that USDA shares Chairman Huckaby's concern, and specifically states as follows:

As we discussed in our meeting with you, the specific case from the Office of Inspector General audit is under review by the Deputy Administrator for State and County Operations in the Agricultural Stabilization and Conservation Service and I assure you the Department of Agriculture will take a very aggressive position in dealing with this case.

In June 1, 1990 letters signed by William Penn, DASCO issued decisions overturning the Tunica County and Coahoma County ASC Committees' decisions approving the plaintiffs' 1989 farm operating plans. Additionally, those letters took the unprecedented action of rendering the initial determinations denying the plaintiffs' request for program benefits for the 1990 crop year. Furthermore, those decisions ruled the plaintiffs ineligible for any federal farm program benefits for 1989, 1990, and 1991 on the ground that the plaintiffs had participated in a "scheme or device for the 1989 and 1990 crop years which was de-

signed to evade the payment limitation regulations of 7 C.F.R. Part 1497."

DASCO informed the plaintiffs that appeal of this decision should be directly to the national level. The plaintiffs appealed this administrative determination accordingly and filed a Freedom of Information Act (FOIA) request with the USDA to obtain documents relevant to these proceedings on July 5, 1990. On September 25, 1990, the plaintiffs received a redacted version of a memorandum dated April 30, 1990 from William Penn, Assistant DASCO, to Keith Bjerke, ASCS Administrator. On November 21, 1990, the plaintiffs initiated proceedings in this court challenging USDA's refusal to release the entire document pursuant to the FOIA. On December 4, 1990, by agreement of the parties, this court entered an order directing that the unredacted version be made available to the plaintiffs.

The unredacted memorandum revealed that at the time the plaintiffs' 1989 farm operating plans were under review by DASCO, Penn and Campbell "met with several staffers, including Huckaby's" on Capitol Hill to discuss issues relating to eligibility for payments under the federal farm programs. Referring to the plaintiffs' plan, the memorandum states that "John (Campbell) and the staffers, as well as myself, were very concerned about this type of organization." Furthermore it stated, "the Under Secretary's office did not want a determination on Mr. Flowers' operation made anyplace except in the office of DASCO. The State office was so informed."

Based upon this evidence, on December 11, 1990, the plaintiffs filed a Petition to Disqualify the national level of USDA from further participation in any adminstrative proceedings. They further requested that the June 1, 1990 DASCO decisions in this matter be declared invalid; the April 6, 1989 decision of the Tunica County, Mississippi ASC Committee and the April 14, 1989 decision of the Coahoma County, Mississippi ASC Committee be reinstated; and the plaintiffs' 1990 farm operating plans either be deemed approved as filed or be remanded to the Tunica County and Coahoma County ASC Committees for determination, with any administrative appeals therefrom limited solely to the Mississippi State ASC Committee.

Approximately two hours after the Petition was filed, the defendants denied the Petition. The plaintiffs were notified that the hearing would be held as scheduled and that any evidence the plaintiffs wished to submit for the record be submitted at that time or not at all. This hearing was postponed on December 12, 1990 when the plaintiffs filed this action for a preliminary injunction.

## LAW

The standard for issuance of preliminary injunctive relief requires the party seeking relief to prove the following:

a) a substantial likelihood of success on the merits;

b) a substantial threat that irreparable injury will result if the injunction is not granted;

c) that the threatened injury outweighs the threatened harm to the non-movant; and

d) that granting the injunction is not adverse to the public interest.

*DFW Metro Line Services v. S.W. Bell Tel. Co.*, 901 F.2d 1267 (5th Cir.1990); *Concerned Women for America Education & Legal Defense Foundation, Inc. v. Lafayette Cty. & Oxford Pub. Library*, 699 F.Supp. 95 (N.D.Miss.1988), *aff'd* 883 F.2d 32 (5th Cir.1989).

## CONCLUSION

The plaintiffs argue that the defendants' June 1, 1990 decisions holding the plaintiffs ineligible for any federal farm program benefits for the 1989, 1990, and 1991 crop years are invalid under the due process clause of the Fifth Amendment to the U.S. Constitution because those decisions were impermissibly obtained by Congressional interference; such interference in this matter violates the plaintiffs' due process rights to a fair and impartial hearing at the national level of the USDA, including DASCO, of the plaintiffs' appeal of the June 1, 1990 decisions by DASCO; defendants'

conduct has been arbitrary and capricious, an abuse of discretion, and contrary to law, causing the plaintiffs irreparable injury if injunctive relief is not granted. The defendants counter stating that the court should allow Commodity Credit Corporation, as a real party in interest, to intervene; should dismiss the USDA and ASCS; should transfer this case to Claims Court; that this court lacks subject matter jurisdiction; and that no irreparable injury would occur.

### a. Intervention of Commodity Credit Corporation

■ Commodity Credit Corporation (CCC) is an "agency and instrumentality of the United States, within the Department of Agriculture, subject to the general supervision and direction of the Secretary of Agriculture." 15 U.S.C. § 714. The CCC has moved to intervene in this action as a real party in interest. It argues that the relief requested by the plaintiffs runs against the CCC.

The plaintiffs contracted to enter into one of the price support and production adjustment programs for rice, cotton, wheat and feed grains. These programs are funded by the CCC; hence, it is argued that the CCC is an interested party. However, the CCC admits that the actual day-to-day operation of administering domestic CCC programs are generally performed by the ASCS.

The CCC and the defendants further note that 15 U.S.C. § 714b(c) bars attachment, injunction, garnishment, or other similar process against the CCC. This is apparently the reason why the defendants and the CCC so adamantly insist upon the intervention of the CCC and the dismissal of the ASCS and USDA.

On point with the facts in this particular issue, the United States District Court of Arizona in *Justice v. Lyng*, 716 F.Supp. 1567 (D.Ariz.1988), ruled that the CCC, as it is not involved in the administrative conduct that led to the action, is not an interested party. The plaintiffs in *Justice* did not name the CCC as a defendant in that particular case. The defendants in *Justice*, as is argued in this case, pushed for CCC intervention as the real party in interest, so that they could in turn argue the above mentioned 15 U.S.C. § 714b(c). That case, as this one, involved declaratory relief in connection with the administration of federal farms programs. In so ruling, the court stated:

> If this court were to find that this action ran against the CCC and that declaratory judgments were equivalent in injunctive relief, the Secretary would be, in essence, immune from judicial review of administrative decisions concerning the Agriculture Act. That would be a nonsensical result.

*Id.* at 1569.

Following that same line of reasoning the court is of the opinion that the action is not against the CCC, but rather the Secretary of Agriculture, the USDA, and the ASCS, as the CCC was not involved in the legislative and administrative conduct which is the cause of this litigation. To find otherwise would be a grant of immunity to the USDA and its administration in matters involving injunctive relief merely because it is funded through the CCC. That, this court likewise finds "nonsensical." The court, therefore, finds the CCC's motion to intervene as a real party in interest to be not well taken. In doing so, the court need not reach the argument of whether injunctive relief may lie against the CCC.

### b. Congressional interference

■ Agency action is invalid if based, even in part, on pressures emanating from Congressional sources. *Pillsbury Co. v. Federal Trade Com.*, 354 F.2d 952 (5th Cir.1966). And, where agency adjudicative proceedings are involved, impermissive influence may be found where the mere appearance of bias or pressure can be shown. *Id.*

■ In the instant case, the court is of the opinion that the letter from Congressman Huckaby, a member of the House Agriculture Committee and principal author of the payment limitation provisions administered by the defendants, along with his key staff aide, exerted impermissible

influence upon officials at the national level of the Department of Agriculture in an effort to dictate the outcome of those proceedings.

Additional evidence exists which makes this finding abundantly clear. The above mentioned letter urging that the plaintiffs be denied eligibility to receive federal farm program benefits was read and responded to by William Penn of DASCO. Penn was, *inter alia*, the officer in charge of reviewing the decisions of the Tunica County and Coahoma County ASC Committees' approval of the plaintiffs' plan and was therefore in a position to implement the Congressman's desires. Penn's response assured Congressman Huckaby that the USDA "will take a very aggressive position in dealing with the [plaintiffs'] case."

The defendants' novel argument that Congressman Huckaby was merely urging the enforcement of the law is simply unconvincing. The court therefore is of the opinion that there has been a sufficient showing of the mere appearance of pressure or bias.

### c. Subject matter jurisdiction

#### (1) Tucker Act

■ The defendants argue that this court lacks subject matter jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1346(a)(2). In pertinent part, this section states that jurisdiction over contract actions against the United States exceeding $10,000 must be brought in the United States Court of Claims. The Tucker Act applies only to claims for monetary damages. *Northside Lumber Co. v. Block*, 753 F.2d 1482 (9th Cir.), *cert. denied*, 474 U.S. 931, 106 S.Ct. 265, 88 L.Ed.2d 271 (1985).

■ The review of claims in district court under the Tucker Act is, however, not precluded or limited when the relief sought is other than money damages, or where nonmonetary relief may form the basis for a future money judgment. *Laguna Hermosa Corp. v. Martin*, 643 F.2d 1376, 1379 (9th Cir.1981). The Court of Claims is limited, for purposes of the instant case, for "actual, presently due monies." ey damages from the United States." *United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1976).

The United States Supreme Court recently clarified the term "money damages" in *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). Quoting an opinion written for the Court of Appeals for the District of Columbia Circuit in *Maryland Dept. of Human Resources v. Department of Health and Human Services*, 763 F.2d 1441 (D.C.Cir. 1985), the Court stated:

We turn first to the question whether the relief Maryland seeks is equivalent to money damages. Maryland asked the district court for a declaratory judgment and for injunctive relief 'enjoining defendants from reducing funds otherwise due to plaintiffs, or imposing any sanction on such funds for alleged Title XX violation.' .... We begin with the ordinary meaning of the words Congress employed. The term 'money damages,' 5 U.S.C. § 702, we think, normally refers to a sum of money used as compensatory relief. Damages are given to the plaintiff to substitute for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.' .... The fact that in the present case it is money rather than in-kind benefits that pass from the federal government to the state cannot transform the nature of the relief sought-specific relief, not relief in the form of damages.

*Bowen*, 487 U.S. at 894–895, 108 S.Ct. at 2732.

In the instant case the plaintiffs move this court for injunctive relief, *inter alia*, to enjoin the USDA and its subdivisions from further administrative hearings regarding eligibility for the federal farms programs and to reinstate earlier COC decisions. While an award of this nature may serve as a basis for monetary relief, it is not a substitute remedy at all but an attempt to give the plaintiff the very thing to which he was entitled in the first place and is not "money damages" as the term is

contemplated and used in the Tucker Act. The defendants' argument is therefore not well taken.

### (2) 5 U.S.C. § 704, "Exhaustion" requirement

■ The defendants argue that the court should not accept jurisdiction over this matter until all administrative remedies have been exhausted. The exhaustion of the administrative remedies requirement is housed within the Administrative Procedure Act, 5 U.S.C. § 704. In pertinent part, it provides:

Every agency action made reviewable by statute and final agency action for which there is no other adequate remedy in any court are subject to judicial review.

Where it would be futile to comply with the administrative procedures or where the administrative process is unlawful or unconstitutional in form or application, the Fifth Circuit Court of Appeals, in the case of *Patsy v. Florida Int'l Univ.*, 634 F.2d 900 (5th Cir.1981), *rev'd on other grounds*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), has determined that the exhaustion requirement is met. Furthermore, "administrative remedies need not be exhausted when the constitutionality of the agency action is in question." *Philadelphia v. SEC*, 434 F.Supp. 281, 286 (E.D.Pa.1977).

The record clearly shows that the national level of the USDA took unprecedented action when it instructed the Tunica County and Coahoma County ASC Committees not to make an initial determination with respect to the plaintiffs' 1990 plans to receive federal farm program benefits. Furthermore, it overturned the decisions of the Tunica County and Coahoma County ASC Committees' approval of the plaintiffs' 1989 farm operating plans. It likewise declared the plaintiffs to be ineligible to receive any federal farm program benefits to the 1989, 1990, and 1991 crop years on the ground that the plaintiffs had engaged in a scheme or device to evade the payment limitation rules.

As evidence of futility, Don Lloyd, the ASCS officer appointed to conduct the appellate hearing and to make recommenda-tions to DASCO regarding the plaintiffs' administrative appeal, had reviewed Penn's response to the December 6, 1989 letter from Congressman Huckaby to Secretary Yeutter, noted above, which stated that "the USDA will take a very aggressive position in dealing with this case."

These facts lead the court to the conclusion that not only do the administrative proceedings have a mere appearance of having been influenced by Congressional pressures, they have in fact been so impermissively tainted by Congressional interference that it renders further administrative procedures futile. Furthermore, under these circumstances to require the plaintiffs to take their case to the national level of the USDA would violate their constitutional right to a fair and impartial hearing. The court therefore finds the defendants' argument regarding 5 U.S.C. § 704 to be not well taken and the "exhaustion" requirement met, thereby bestowing jurisdiction of this matter upon this court.

### d. Review

5 U.S.C. § 706 provides that a reviewing court, in order to set aside and hold agency actions unlawful, must find such actions to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

■ The defendants have failed to comply with their own procedures regarding the adjudication of eligibility for federal farm programs benefits. The defendants' Handbook at 1–PL provides that *all initial determinations*, as well as determinations regarding whether a farmer has adopted a scheme or device to evade the payment limitation rules, are to be made at the county level (emphasis added). The evidence clearly shows that the national level of the USDA, in an unprecedented action, ordered the county ASCS offices to refrain from making the initial determinations regarding the plaintiffs' 1990 farm plans, then made the initial determinations itself and refused to allow the state ASCS office to review the counties' decisions.

As evidence of arbitrary and capricious behavior, the record reflects that the USDA officials at the national level ordered the county ASCS offices to refrain from any communication with the plaintiffs regarding their 1989 and 1990 farm operating plans, in contrast to other situations in which such communications were permitted. Furthermore, the USDA officials who were responsible for the initial determination denying the plaintiffs' eligibility for program benefits, including the administrative appeals hearing officer, were appointed to consider the plaintiffs' petition to disqualify the national level of the USDA from further participation in proceedings regarding this matter. Not surprisingly, the petition was denied within two hours of its filing. If a court of law engaged in such actions in regard to a case before it, the judge would be deservedly admonished by an appellate court.

By engaging in such aforementioned behavior, the defendants have violated the Fifth Amendment due process clause guaranteeing the right to a fair and impartial hearing. In doing so, the defendants have acted contrary to law.

For the aforementioned reasons, the court finds the defendants to have acted arbitrarily, capriciously, and contrary to law, and to have abused their discretion, all in violation of § 706 of the Administrative Procedure Act.

### e. Holding

■ The court finds that there is a substantial likelihood of the plaintiffs succeeding on the merits of this case. This is made evident in Chairman Huckaby's letter to the Secretary of Agriculture in which he stated:

> During the preparation of the payment eligibility legislation, staff of the Members involved had numerous meetings over several months with representatives of the Department to ensure that this legislation was suitable to both the Department and the Congress and closed all possible loopholes. *In the cases of estates and irrevocable trusts, the Department strongly urged us not to codi-*

> *fy the treatment of these types of entities but to allow the Department to determine the manner in which these entities would be handled.*

(Emphasis added.) The court has no evidence before it, other than the statements by Chairman Huckaby involving spirit and intent, that suggests the creation of irrevocable trusts is contrary to the farm program eligibility regulations.

Unless the injunctive relief sought is granted, the plaintiffs will be participants in an adjudicative appellate process which the court finds to be impermissibly tainted by Congressional interference. Because of such interference, the plaintiffs' due process rights to a fair and impartial hearing have been compromised. In *Deerfield Medical Center v. Deerfield Beach*, 661 F.2d 328, 338 (5th Cir.1981), the Fifth Circuit noted that a violation of constitutional rights constitutes an irreparable injury. As such is the case instantly, the court finds the requisite irreparable injury present.

Furthermore the court is of the opinion that the threatened injury outweighs the threatened harm to the non-movant and that granting the injunction is not adverse to the public interest.

Agency action is invalid if based, even in part, on pressures emanating from Congressional sources. *Pillsbury Co. v. Federal Trade Com.*, 354 F.2d 952 (5th Cir. 1966).

As the court has already found a sufficient showing of impermissible Congressional influence or pressure to warrant the imposition of a preliminary injunction, the court is of the opinion that the plaintiffs' motion for preliminary injunction requesting certain declaratory and injunctive relief is well taken and should be granted.

An order in accordance with this memorandum opinion will this day issue.

### ORDER

In accordance with the memorandum opinion this day issued it is hereby ORDERED that:

1. The motion of Commodity Credit Corporation to intervene is DENIED;

2. The defendants' June 1, 1990 decisions holding the plaintiffs ineligible for any federal farm program benefits for the 1989, 1990 and 1991 crop years are OVERRULED AND VACATED;

3. The defendants are hereby permanently ENJOINED from allowing the national level of the USDA, including DASCO, to participate further in any determinations or administrative appeals concerning the plaintiffs' eligibility for the federal farm program benefits for the 1989, 1990, and 1991 crop years;

4. The April 6, 1989 decision of the Tunica County, Mississippi ASC Committee and the April 14, 1989 decision of the Coahoma County, Mississippi ASC Committee approving the 1989 farm operating plans of the plaintiffs DCP Farms, Flowers Farms, and Flowers and Parker Farms are REINSTATED;

5. The defendants shall forthwith either approve as filed the 1990 farm operating plans of the plaintiffs DCP Farms, Increase Plantation, Matagorda Plantation, Omega Plantation, and Flowers and Parker Farms or remand those farm operating plans to the Tunica County and Coahoma County ASC Committees, as appropriate, for initial determinations and shall provide that any administrative appeals from such initial determination be limited solely to the Mississippi State ASC Committee;

6. The plaintiffs are awarded their costs of suit; and

7. The clerk of this court is DIRECTED to enter final judgment in favor of plaintiffs, as provided herein, forthwith.

SO ORDERED AND ADJUDGED.