IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 91-1384

DCP FARMS, ET AL.,

Plaintiffs-Appellees,

versus

CLAYTON YEUTTER, SECRETARY OF
AGRICULTURE, AND U.S. DEPARTMENT
OF AGRICULTURE, AGRICULTURAL
STABILIZATION & CONSERVATION SERVICE,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Mississippi

Before REAVLEY, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

This appeal raises the question of whether the "mere appearance of bias or pressure" standard adopted in Pillsbury Co. v. FTC, 354 F.2d 952 (5th Cir. 1966) applies to claims of improper congressional interference with an administrative determination of eligibility for farm subsidies. We find that contact between a congressman and the U.S. Department of Agriculture involving a pending proceeding that was neither quasi-judicial nor judicial is not governed by the Pillsbury standard. We hold that in such proceedings congressional contact does not go beyond the pale unless it causes the administrator to consider extraneous factors

in reaching his decision. We conclude then that remaining administrative procedures were not tainted and the district court abused its discretion by reviewing the agency decision when these administrative remedies were not exhausted. Judicial intervention in the agency's decision-making process before DCP Farms exhausted its administrative remedies is unjustified without a clear showing of futility. We reverse the district court's grant of injunctive relief and remand the case with instructions to dismiss.

## I.

Farmers submit annual farm operating plans, which serve as subsidy applications, to the county Agricultural Stabilization & Conservation Service office. A county committee of local farmers elected by their peers makes an initial determination of eligibility and amount of subsidy. Appeal is to a state committee of farmers appointed by the Secretary. Despite this delegation of decision-making responsibility to the state and local committees, the USDA expressly reserves the right to reverse or modify any determination made by a county or state committee or by the Deputy Administrator. 7 C.F.R. § 1497.2(d). Any producer or participant dissatisfied with a decision at any level may request reconsideration. Esch v. Yeutter, 876 F.2d 976, 987 (D.C. Cir. 1989). If the USDA decides to review a determination made at the state or county level, a Deputy Administrator investigates the case and makes an initial determination. If the Deputy Administrator's

2

initial determination is adverse a farmer may appeal to a USDA hearing officer.

DCP Farms are three joint venture farms with cotton, rice, and other crops in Tunica and Coahoma counties, Mississippi. This case arises from attempts by the Department of Agriculture to enforce the statutory limit of $50,000 per "person" in federal crop subsidies against DCP Farms. 7 U.S.C. § 1308. The three farms, controlled by two families, had created 51 irrevocable trusts to maximize the number of "persons" eligible to receive farm subsidy payments. DCP Farms were slated to receive $1.4 million in subsidies for the 1989 crop year.

After the county committee approved DCP Farms' requested subsidy for the 1989 crop year, the USDA decided to review DCP Farms' eligibility. In September 1989, the USDA's Office of Inspector General released a report of abuses of the farm subsidy program. The report highlighted DCP Farms as an example of egregious violations of the $50,000 per person limit. This report sparked considerable publicity and in late 1989, USDA officials met with Congressional staff involved in agricultural affairs to discuss the issues raised in the OIG report. John Campbell, Deputy Undersecretary of Agriculture for Commodity Programs, and William E. Penn, Assistant Deputy Administrator for State and County Operations of ASCS, attended the meeting. Parks Shackelford, the key staff aide on agricultural issues for Congressman Huckaby, the chairman of the Subcommittee on Cotton, Rice, and Sugar was an active participant. DCP Farms were specifically discussed.

3

On December 6, 1989, Chairman Huckaby wrote to Agriculture Secretary Yeutter expressing concern about "a number of recent press items reporting abuses of the new farm program payment eligibility regulations." The letter cites DCP Farms as described in the OIG report as an example of continued abuse of the statutory limit on payments. The most pointed part of the letter states

> As the principal sponsor of the legislation which established the new payment eligibility requirements, I feel strongly that the [DCP Farms] operation violates both the spirit and letter of the law. It was clearly not the intent of Congress that such operations would qualify for such vast sums; if this operation does receive the reported $1.4 million, it will only happen because USDA has failed to implement and enforce the law as intended by Congress.

Congressman Huckaby urged the Secretary "to carefully review the Tunica County, Mississippi case and any other similar operations." He was particularly concerned about the treatment of 51 irrevocable trusts as "persons" in light of previous assurances from the USDA that it need not codify the treatment of irrevocable trusts and estates, but could leave it to the Secretary to regulate. Congressman Huckaby indicated that if the USDA allowed DCP Farms to treat all 51 irrevocable trusts as "persons," he would introduce legislation to revise the definition of "persons" to exclude trusts entirely.

In response to Congressman Huckaby's letter, Penn drafted a letter which was signed by Campbell on behalf of Under Secretary of Agriculture Richard Crowder. The letter informed Congressman Huckaby that the DCP Farms case was under administrative review and assured him that "the Department of Agriculture will take a very

4

aggressive position in dealing with this case." The letter did not suggest that the USDA was committed to a specific outcome. In fact, the Secretary's letter indicates a likelihood that DCP Farms' organization would be allowed under an equitable reorganization rule allowing farmers to reorganize their holdings to prevent a reduction in payments.

In April 1990, the Deputy Administrator notified the Mississippi ASCS office that the initial determination on DCP Farms for 1990 would be made at the national level along with the agency's initial determination of DCP Farms' eligibility under the 1989 plan. On June 1, 1990, the Deputy Administrator issued three letter opinions concluding that DCP Farms had adopted schemes or devices to evade the payment limitation provisions and therefore was ineligible to receive any subsidy payments for the 1989, 1990, or 1991 crop years.

DCP Farms appealed from the initial determination and requested a hearing, which was set for December 12, 1990. Before the hearing, however, DCP Farms obtained documents disclosing the USDA meeting with congressional staffers and the letter from Chairman Huckaby. DCP Farms petitioned the Deputy Administrator to disqualify all employees and officials of the national office from further involvement in the administrative proceedings. The petition was denied.

On December 12, 1990, DCP Farms sued for declaratory and injunctive relief alleging that improper congressional interference denied them due process and that USDA's conduct was arbitrary,

5

capricious and an abuse of discretion under the Administrative Procedure Act. The district court granted DCP Farms' request for permanent injunctive relief. The USDA appeals.

## II.

DCP Farms' due process claim is based upon this court's decision in Pillsbury Company v. Federal Trade Commission, 354 F.2d 952 (5th Cir. 1966). While Pillsbury's case was pending before the FTC, the Subcommittee on Antitrust and Monopoly of the Senate Judiciary committee held hearings at which several members of the Commission and its staff appeared, including the author of the Commission's final opinion. The committee members questioned the FTC members at length about their reasoning and were critical of an earlier FTC ruling in the case. Id. at 964. The Federal Trade Commission eventually found that Pillsbury had violated § 7 of the Clayton Act.

The Pillsbury court held:

> when an investigation "focuses directly and substantially upon the mental decisional processes of a Commission in a case which is pending before it, Congress is no longer intervening in the agency's legislative function, but rather, in its judicial function. At this latter point, we become concerned with the right of private litigants to a fair trial and, equally important, with their right to the appearance of impartiality, which cannot be maintained unless those who exercise the judicial function are free from powerful external influences."

354 F.2d at 964 (emphasis in original). Pillsbury has been interpreted to invalidate adjudicative agency decisions whenever congressional contact with an agency creates the mere appearance of bias or pressure. D.C. Federation of Civil Ass'ns v. Volpe, 459

F.2d 1231 (D.C. Cir. 1971). The district court here relied on Pillsbury to conclude that Congressman Huckaby's letter to the USDA invalidated the agency's administrative determination by creating an appearance of bias or pressure. The district court held that Chairman Huckaby "exerted impermissible influence upon officials at the national level of the Department of Agriculture in an effort to dictate the outcome of those proceedings."

We must disagree with the district court's determination that Pillsbury governs this case. Pillsbury holds that the appearance of bias caused by congressional interference violates the due process rights of parties involved in judicial or quasi-judicial agency proceedings. 354 F.2d at 964. See D.C. Federation of Civic Associations v. Volpe, 459 F.2d 1231, 1246 (D.C. Cir. 1972), (declining to apply Pillsbury standard to congressional interference where the Secretary's action was neither judicial nor quasi-judicial). Pillsbury was a case pending before a quasi-judicial body which would render the agency's final decision. In contrast, the contact here occurred well before any proceeding which could be considered judicial or quasi-judicial. This case would not have reached the stage when it could fairly be called adjudicative or quasi-judicial until the hearing which was scheduled for December 1990. There was no hearing on the merits of DCP Farms' application for farm subsidy payments because DCP Farms abandoned the administrative process for this litigation.

In short, the congressional communication here was not aimed at the decision-making process of any quasi-judicial body.

7

Congressman Huckaby was concerned about the administration of a congressionally created program. The dispute between the USDA and DCP Farms was part of a larger policy debate. Applying Pillsbury's stringent "mere appearance of bias" standard at this juncture of administrative process would erect no small barrier to Congressional oversight. It reflects an insular view of these administrative processes for which we find no warrant. We are unwilling to so dramatically restrict communications between Congress and the executive agencies over policy issues. Appearance of bias is not the standard.

                                III.

Actual bias is ordinarily required to invalidate decisions by federal agencies. See Dirt, Inc. v. Mobile County Commission, 739 F.2d 1562 (11th Cir. 1984), ("Although such an appearance of bias is clearly present in this case, the standards governing administrative proceedings are far more relaxed than those controlling judicial proceedings."). An administrative decision will be overturned only when the hearing officers' mind is irrevocably closed or there was an actual bias. United States v. Batson, 782 F.2d 1307, 1315 (5th Cir. 1986). See also FTC v. Cement Institute, 333 U.S. 683 (1948).

We agree with the D.C. Circuit's conclusion in Peter Kiewit Sons' Co. v. U.S. Army Corps of Engineers, 714 F.2d 163 (D.C. Cir. 1983) that the proper standard for evaluating congressional interference with non-judicial decisions of administrative agencies is whether the communication actually influenced the agency's

                                  8

decision. More specifically, the test is "whether 'extraneous factors intruded into the calculus of consideration' of the individual decisionmaker." Id. at 170, quoting D.C. Federation, 459 F.2d at 1246.

This focus on the intrusion of improper extraneous factors into the agency's decision-making process recognizes the political reality that "members of Congress are requested to, and do in fact, intrude in varying degrees, in administrative proceedings." S.E.C. v. Wheeling-Pittsburgh Steel Corp., 648 F.2d 118, 126 (3d Cir. 1981) (en banc). It would be unrealistic to require that agencies turn a deaf ear to comments from members of Congress. The agency's duty, so long as it is not acting in its quasi-judicial capacity, is simply to "give congressional comments only as much deference as they deserve on the merits." Id.

We are cautious in reading extraneous factors too broadly, lest they impair agency flexibility in dealing with Congress. In particular, an agency's patient audience to a member of Congress will not by itself constitute the injection of an extraneous factor. Nor would a simple plea for more effective enforcement of a law be the injection of an improper factor. A truly extraneous factor must take into account "considerations that Congress could not have intended to make relevant." D.C. Federation, 459 F.2d at 1247.

Congressional "interference" and "political pressure" are loaded terms. We need not attempt a portrait of all their sinister possibilities, even if we were able to do so. We can make plain

9

that the force of logic and ideas is not our concern. They carry their own force and exert their own pressure. In this practical sense they are not extraneous. That a congressman expresses the view that the law ought not sanction the use of fifty-one irrevocable trusts to gain $1.4 million in subsidies is not impermissible political "pressure." It certainly injects no extraneous factor. We find no due process right in these preliminary efforts to persuade the government to grant farm subsidies sufficient to exclude the political tugs of the different branches of government, and we see nothing more here. We reject the holding of the district court that DCP Farms could ignore the administrative procedure yet available to it and turn to the consequence of this bypass of remedies.

IV.

The Administrative Procedure Act provides for judicial review of agency action only where it is "made reviewable by statute" or is "final agency action." 5 U.S.C. § 704. The deputy administrator's initial determination of eligibility for farm subsidy payments is not made reviewable by statute, nor is it the USDA's final action on DCP Farms application. We review the district court's ruling concerning exhaustion of administrative remedies for abuse of discretion. Girard v. Klopfenstein, 930 F.2d 738, 741 (9th Cir. 1991).

The exhaustion requirement is not absolute, however, and this court has recognized exceptions. The district court apparently relied upon two of these exceptions to conclude that immediate

10

judicial review of the agency's decision was appropriate. We conclude that as a matter of law neither exception applies to the facts of this case. The exceptions to the requirement that administrative remedies be exhausted apply only in "extraordinary circumstances." Central States S.E. and S.W. Areas Pension Fund v. T.I.M.E.-D.C., Inc., 826 F.2d 320, 329 (5th Cir. 1987). The first is when "the plaintiff contends that the administrative system itself is unlawful or unconstitutional." Patsy v. Florida Int'l University, 634 F.2d 900, 904 (5th Cir. 1981). This exception is inapplicable because the challenge here is not to provisions of the administrative process, but to its alleged subversion.

The second exception to the exhaustion requirement relied upon by the district court is when the plaintiff demonstrates that "it would be futile to comply with the administrative procedures because it is clear that the claim will be rejected." Patsy, 634 F.2d at 904. We are convinced that DCP Farms has failed as a matter of law to produce evidence sufficient to support a finding of futility.

The district court relies upon two facts to support its conclusion that the USDA process would be futile because the claim would clearly be rejected. First, the district court cites the fact that Don Lloyd, the ASCS officer appointed to conduct the appellate hearing, had reviewed the letter USDA sent in response to Congressman Huckaby's letter. Second, the district court relies upon the USDA's summary rejection of DCP Farms' petition to recuse the entire national level of the USDA from consideration of their

11

case. A summary rejection was justified, however, by the unreasonably broad nature of the requested relief. It does not convince us that the USDA would have unreasonably refused a request for a different hearing officer had DCP Farms made such a request. In any event, evidence that a hearing officer read a letter involving this case is weak evidence that pursuing administrative appeals would have been futile. We recognize DCP Farms' concern that its appeal would have been heard by an officer it considered tainted by knowledge of Congressman Huckaby's letter. Nonetheless, these two pieces of evidence, without more, do not support a conclusion that pursuit of the USDA appeals process would be futile.

The appropriate forum for resolving this dispute is an appeal from a final USDA decision. The relief that DCP Farms sought here is exceptional. The federal courts are asked to enjoin an administrative agency from proceeding through its internal review process to reach a final agency decision. We decline to intrude into the USDA's administrative process where the plaintiff has not demonstrated a valid reason to be excused from exhausting its administrative remedies. To the extent that DCP Farms believes that extraneous factors were considered in the USDA's initial determination, it may make that argument in its appeal of the Deputy Administrator's decision.

We conclude that the district court erred in granting DCP Farms' request for injunctive relief. Accordingly, we REVERSE and REMAND with instructions to dismiss.

12