# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

─────────

Nos. 17-40077 & 17-40134

─────────

United States Court of Appeals
Fifth Circuit

**FILED**

May 8, 2018

Lyle W. Cayce
Clerk

RAQUEL HINOJOSA, also known as Raquel Flores Venegas,

> Plaintiff - Appellant

v.

PETRA HORN, Port Director, United States Customs and Border Protection; MIKE POMPEO, SECRETARY, U.S. DEPARTMENT OF STATE; KIRSTJEN M. NIELSEN, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY; UNITED STATES OF AMERICA,

> Defendants - Appellees

and

DENISSE VILLAFRANCA,

> Plaintiff - Appellant

v.

MIKE POMPEO, SECRETARY, U.S. DEPARTMENT OF STATE; UNITED STATES OF AMERICA; PETRA HORN, Customs and Border Protection Port Director, Brownsville, Texas; JONATHAN M. ROLBIN, Director, Legal Affairs and Law Enforcement Liaison, of the United States Department of State,

> Defendants - Appellees

─────────────

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 1:16-CV-10
USDC No. 1:16-CV-155

─────────────

Nos. 17-40077 & 17-40134

Before DENNIS, CLEMENT, and GRAVES, Circuit Judges.

PER CURIAM:*

Due to the similarity in the factual background and legal issues in these two cases, we resolve both in a single opinion.

Raquel Hinojosa and Denisse Villafranca (collectively, the "Plaintiffs") were denied passports by the Department of State ("DOS") because they were deemed not to be United States citizens. They separately challenged this determination by filing complaints in the United States District Court for the Southern District of Texas, raising similar claims under the habeas corpus statute, 28 U.S.C. § 2241, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 *et seq.* Rejecting the Plaintiffs' various arguments, the district court granted the Government's motion to dismiss in each case. We AFFIRM both dismissals.

I.

Both Hinojosa and Villafranca claim they were born in Brownsville, Texas, and they have United States birth certificates supporting their claims. Both also have birth certificates issued by the Mexican government, which indicate they were born in Mexico—though Villafranca modified her Mexican birth certificate in 2010 to list Brownsville as her birthplace. Both were raised and spent much of their lives in Mexico, but are now seeking entry into the United States.

Hinojosa applied for a U.S. passport in July 2015. Her application included documents tending to prove that the Mexican birth certificate was false. DOS was unpersuaded and denied her application in November 2015,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

finding that she had presented insufficient evidence to establish that she was born in the United States.

Hinojosa sought immediate judicial review of this determination before the district court. In 2016, she traveled to a port of entry in Brownsville and filed a petition for a writ of habeas corpus, as well as a complaint for declaratory and injunctive relief under the APA. The district court, adopting the report and recommendations of the magistrate judge, ultimately granted the Government's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), finding that it lacked jurisdiction to provide habeas relief or to proceed under the APA. It also considered an as-applied constitutional challenge to the statute that denies entry to U.S. citizens without passports, 8 U.S.C. § 1185(b), but found she lacked standing to assert it. Hinojosa timely appealed.

Unlike Hinojosa, Villafranca applied for and was issued a U.S. passport in August 2005. But in November 2014, DOS revoked Villafranca's passport, finding that, based on the information contained in her Mexican birth certificate before she had modified it, she had misrepresented her U.S. citizenship in her 2005 application. In its letter notifying Villafranca of the revocation, DOS stated that she was not entitled to a hearing under 22 C.F.R. §§ 51.70–51.74 because her passport had been revoked on the grounds of non-nationality. But the letter informed her that she could still contest the decision by "pursu[ing] an action in U.S. district court under 8 U.S.C. Section 1503." She was ordered to surrender her passport immediately.

Before receiving notification that her passport had been revoked, Villafranca had traveled to Mexico. When she attempted to reenter the United States at the port of entry in Brownsville, Texas, she was denied entry and her passport was seized.

Nos. 17-40077 & 17-40134

Villafranca filed a petition in the district court in June 2016. She asserted similar claims for habeas relief under 28 U.S.C. § 2241 and declaratory and injunctive relief under the APA.  She also argued that she could bring a declaratory judgment action under 8 U.S.C. § 1503(a). The petition was heard by the same judge that heard Hinojosa's petition. The judge again granted the Government's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), finding that it lacked jurisdiction to hear Villafranca's APA and habeas claims.  It rejected her argument that she could pursue a declaratory judgment action under 8 U.S.C. § 1503(a) because she was not "within the United States" as required by the statute. Villafranca timely appealed.

## II.

The first issue is whether the Plaintiffs may seek relief under the APA. This court reviews a district court's dismissal for lack of subject matter jurisdiction de novo. *Ctr. for Biological Diversity v. BP Am. Prod. Co.*, 704 F.3d 413, 421 (5th Cir. 2013); *Musslewhite v. State Bar of Tex.*, 32 F.3d 942, 945 (5th Cir. 1994).

The Plaintiffs sought similar relief under the APA: Hinojosa challenged the denial of her application for a U.S. passport because she was a non-citizen. Villafranca challenged the revocation of her passport because its issuance was based on the misrepresentation that she was a U.S. citizen. The district court rejected Villafranca's petition because it concluded she was not appealing a final agency action. By contrast, it rejected Hinojosa's petition because it concluded there was an adequate alternative means of receiving judicial review under 8 U.S.C. § 1503. Both grounds provide independent bases to reject an APA claim. *See Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999) (finality requirement); *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (no other adequate remedy requirement).

4

Nos. 17-40077 & 17-40134

Section 1503 outlines the process by which individuals can receive judicial review of the denial of "a right or privilege as a national of the United States" by a government official, department or independent agency "upon the ground that he is not a national of the United States." 8 U.S.C. §§ 1503(a), (b). On appeal, both Villafranca and Hinojosa challenge the dismissal of their APA claims by arguing that the procedures under 8 U.S.C. § 1503 are inadequate.[1] We disagree. After reviewing the adequacy requirement under the APA and the procedures afforded under § 1503, we conclude that the district court's denial on this basis was proper.[2]

### A. The Adequate Alternative Remedy Requirement

The APA provides judicial review for "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Notwithstanding this broad definition, the APA limits the sort of "agency action[s]" to which it applies. Specifically, the statute requires that the challenged act be an "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." *Id.* § 704. Section 704 imposes both finality and exhaustion requirements on the agency action appealed, *see* 2 RICHARD J. PIERCE, ADMINISTRATIVE LAW TREATISE §§ 15.3, 15.11 (5th ed. 2010), but it also limits the APA to the review of those agency actions which otherwise lack an "adequate remedy in a court." *Bowen*, 487 U.S. at 903 ("[T]he provision as enacted also makes it clear that Congress did not intend the

---

[1] In so arguing, both concede that § 1503 procedures apply to them. We note that the decision-making process of a passport revocation is separately defined at 8 U.S.C. § 1504. Although the statute also provides for a "prompt post-cancellation hearing" to contest the decision, *id.*, that procedure is expressly denied when the revocation is on the basis of "non-nationality," 22 C.F.R. § 51.70. Accordingly, the procedures are unavailable to Villafranca.

[2] Since we affirm on this basis, we need not consider the court's alternative ruling on finality.

general grant of review in the APA to duplicate existing procedures for review of agency action."). It is this latter requirement that is before us.

At a minimum, the alternative remedy must provide the petitioner "specific procedures" by which the agency action can receive judicial review or some equivalent. *Id.* The adequacy of the relief available need not provide an identical review that the APA would provide, so long as the alternative remedy offers the "same genre" of relief. *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 846 F.3d 1235, 1245 (D.C. Cir. 2017) (quoting *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1272 (D.C. Cir. 2005)); *see also Rimmer v. Holder*, 700 F.3d 246, 262 (6th Cir. 2012); *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) ("The relevant question under the APA . . . is not whether [the alternatives to APA relief] are as effective as an APA lawsuit against the regulating agency, but whether the private suit remedy provided by Congress is adequate.").

This requirement entails a case-specific evaluation. For example, the Supreme Court in *Bowen v. Massachusetts* analyzed whether review by the Claims Court was an adequate alternative remedy, when the petitioner, the Commonwealth of Massachusetts, sought review of an agency determination denying Medicaid expense reimbursement. 487 U.S. at 904–08. Finding this review inadequate, the Supreme Court noted that the Claims Court could not grant equitable relief, which might be necessary to remedy the state's alleged harm, and that the Claims Court might not have jurisdiction for similar claims brought by other states. *Id.* The Court's conclusion regarding adequacy, in other words, was based on the facts of the case—looking specifically at the party seeking relief and its particular claim. *See Consol. Edison Co. of N.Y., Inc. v. U.S. Dep't of Energy*, 247 F.3d 1378, 1384 (Fed. Cir. 2001) ("In *Bowen*,

6

the Supreme Court linked its judgment to a specific set of circumstances that are not present in this case.").

Moreover, judicial review must come via the petitioner's direct appeal. In *Sackett v. EPA*, 566 U.S. 120, 127 (2012), for example, the Supreme Court rejected the government's argument that the plaintiffs, who challenged the EPA's determination that their property violated the Clean Water Act, had adequate alternative remedies. The Court concluded that the first proposed alternative, challenging an EPA enforcement action, was inadequate because petitioners "cannot initiate that process" and risked onerous liability. *Id.* The other alternative—applying to a separate agency for an unrelated permit and then raising a claim under the APA if the application was denied—was too indirect. *Id.* ("The remedy for denial of action that might be sought from one agency does not ordinarily provide an 'adequate remedy' for action already taken by another agency."). On the other hand, the fact that judicial review is delayed by multiple steps of intermediary administrative review does not render the procedure inadequate so long as the agency review is not discretionary. *Dresser v. Meba Med. & Benefits Plan*, 628 F.3d 705, 710–11 (5th Cir. 2010).

Last, the existence of an adequate alternative remedy also requires the discernment of a legislative intent to create such a remedy. *Garcia*, 563 F.3d at 523. The D.C. Circuit has articulated a helpful rule of thumb for this task—namely, that strong evidence of such intention exists when Congress provides for "[t]he creation of both agency obligations and a mechanism for judicial enforcement in the same legislation." *Citizens for Responsibility*, 846 F.3d at 1245.

### B. Section 1503 Procedures

With these principles in mind, we now turn to the procedures set forth in the statute in question. 8 U.S.C. § 1503 outlines specific procedures to appeal

the denial of "a right or privilege as a national of the United States" by a government official, department or independent agency "upon the ground that he is not a national of the United States." 8 U.S.C. §§ 1503(a), (b). The statute provides two separate procedures for individuals to vindicate such claims, depending on whether they are within the United States.

When the individuals are already within the United States, judicial review is immediately available: They are authorized to "institute an action under [the Declaratory Judgment Act] against the head of such department or independent agency for a judgment declaring him to be a national of the United States." *Id.* § 1503(a).

When they are not already within the United States, however, the path to judicial review is longer because such individuals must first gain admission into the country by the procedures set forth in §§ 1503(b)–(c). These provisions first require an application to "a diplomatic or consular officer of the United States" for a certificate of identity, which allows petitioners to "travel[ ] to a port of entry in the United States and apply[ ] for admission." *Id.* § 1503(b). To receive the certificate, petitioners must demonstrate good faith and a "substantial basis" for the claim that they are, in fact, American citizens. *Id.* If their applications are denied, petitioners are "entitled to an appeal to the Secretary of State, who, if he approves the denial, must provide a written statement of reasons." *Id.* The statute does not itself provide a means of reviewing the Secretary of State's decision if he confirms the denial.

If the certificate of identity is issued—either by the diplomatic or consular officer or by the Secretary of State—the individual may apply for admission to the United States at a port of entry, subject "to all the provisions . . . relating to the conduct of proceedings involving aliens seeking admission to the United States." *Id.* § 1503(c). If admission is denied, petitioners are entitled to "[a] final determination by the Attorney General" that is "subject to

review by any court of competent jurisdiction in habeas corpus proceedings and not otherwise." *Id.* Conversely, if admission is granted, thereby permitting them to travel within the United States, they can file a declaratory judgment action under § 1503(a).

### C. The Plaintiffs' Remedy Under § 1503 is an Adequate Alternative to APA Relief.

We now apply this procedural framework to the present cases, looking specifically to the wrong the Plaintiffs assert as well as the procedures currently available to remedy that wrong. First, the wrong to be remedied is the deprivation of U.S. passports on the allegedly erroneous conclusion that they are not citizens. They have, in other words, been denied "a right or privilege . . . upon the ground that [they are] not . . . national[s] of the United States." As noted, § 1503 is specifically designed to review such denials.

Second, we look to the procedures currently available to these Plaintiffs, who have not taken any of the procedural steps required by § 1503. As noted, the statute articulates two bases for reaching the courts to remedy their claims: They are permitted to file a habeas petition if denied admission at the port of entry, or, if granted admission, they are permitted to file a declaratory judgment action. Notably, both forums permit the Plaintiffs to prove their citizenship. If their petition is successful, the hearings will overturn the basis for the deprivation of their U.S. passports.

The only instance in which the Plaintiffs might not receive judicial review under the statute is if their petitions for certificates of identity are denied by the Secretary State. At that moment, they would be entitled to relief under the APA—a point which the Government concedes. But the mere chance that the Plaintiffs might be left without a remedy in court does not mean that the § 1503 is inadequate as a whole. In other words, the Plaintiffs are not entitled to relief under the APA on the basis that a certificate of identity *might*

be denied. Otherwise, all persons living abroad claiming United States citizenship would be able to skip §§ 1503(b)–(c) procedures by initiating a suit under the APA.

In light of the foregoing, we are satisfied that 8 U.S.C. § 1503 establishes an adequate alternative remedy in court for these Plaintiffs. As noted, the statute provides a direct and guaranteed path to judicial review. Moreover, the provision comprises "both agency obligations and a mechanism for judicial enforcement." *Citizens for Responsibility*, 846 F.3d at 1245. In sum, § 1503 expresses a clear congressional intent to provide a specific procedure to review the Plaintiffs' claims. Permitting a cause of action under the APA would provide a duplicative remedy, authorizing an end-run around that process. We therefore affirm the district court's determination that it lacked jurisdiction.

The Plaintiffs rely on *Rusk v. Cort,* 369 U.S. 367 (1962), *abrogated in part by Califano v. Sanders*, 430 U.S. 99 (1977), to contest the adequacy of § 1503's procedures. In *Rusk*, the plaintiff's application to renew his U.S. passport, which he made while living abroad, was denied on the grounds that he had lost his citizenship. *Id.* at 369. The Supreme Court permitted the plaintiff to jettison the procedures of § 1503 and bring an APA claim to challenge the denial. *Id.* at 379–80. Though the Plaintiffs here attempt to analogize their present position with the *Rusk* plaintiff, the analogy fails.

Two preliminary points are worth noting at the outset. First, it is unclear to what degree that *Rusk* remains good law in light of *Califano*. *Rusk* construed the APA as a jurisdiction-conferring statute, 369 U.S. at 370–72, an assertion that was expressly rejected in *Califano*, 430 U.S. at 105. It is unclear whether this fundamental transformation of APA's purpose would alter *Rusk*'s analysis.

Second, the *Rusk* Court never explicitly discusses the adequacy requirement of the APA, and *Rusk* has rarely been relied on by either the Supreme Court or this Court when discussing it. When *Rusk* has been cited, it

is usually for the basic proposition that Congress must clearly express an intent to "preclude the citizen's right to seek judicial redress for violations of his rights" by agency action under the APA. *E.g.*, *Heckler v. Ringer*, 466 U.S. 602, 644–45 (1984) (Stevens, J., concurring); *see also Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 63–64 (1993). As noted, the Supreme Court significantly developed and expanded the adequacy requirement since *Bowen*. It is thus unclear whether and to what extent *Rusk* is or remains an instructive account of the adequacy requirement.

We need not resolve these issues, however, because *Rusk*'s holding is inapplicable to the present cases. Both the *Rusk* plaintiff and his claim for relief differ substantially from the Plaintiffs and their claims here. Accordingly, the Court's case-specific application of the adequacy requirement to § 1503 has no bearing on our current review.

Unlike the Plaintiffs here, the plaintiff in *Rusk*, who lived in Prague at the time, was denied an application for a new passport on grounds that his citizenship had been revoked. 369 U.S. at 369. He had allegedly moved to Europe to dodge the draft. *Id.* As a result of his actions, he had not only lost his citizenship, but had also been criminally indicted for draft evasion. *Id.*

When considering whether the plaintiff's sole remedy was through the procedures set forth in § 1503(b) and (c), the Court was motivated by the particular hardship the plaintiff faced. Reviewing the statute's language and legislative history, the Court concluded that Congress could not have "intended that a native of this country living abroad must travel thousands of miles, *be arrested, and go to jail* in order to attack an administrative finding that he is not a citizen of the United States." *Id.* at 375 (emphasis added). Instead, the Court was persuaded that the procedures were intended to check the entry of illegal aliens, who try "to gain fraudulent entry to the United States by prosecuting spurious citizenship claims." *Id.* at 376–79. In light of the extreme

11

Nos. 17-40077 & 17-40134

burden the § 1503 procedures would have placed on the plaintiff, whose claim and circumstance § 1503 was not specifically intended to address, the plaintiff could proceed under the APA. *Id.* at 379.

Here, as outlined above, the path to judicial review for the Plaintiffs is far less treacherous because neither has been criminally indicted and thus does not risk incarceration upon arrival. Instead, §§ 1503(b)–(c) provide a clear path to judicial review. Moreover, in stark contrast to the plaintiff in *Rusk*, both Villafranca and Hinojosa were at the United States border at the time of this suit. They seek entry into the country on the basis of a claim of U.S. citizenship. In other words, they are precisely the sort of persons that Congress, according to *Rusk*, was concerned to regulate under §§ 1503(b)–(c). These cases present the exact facts that the *Rusk* Court held *would* implicate the jurisdictional restrictions.

## III.

We next consider Plaintiffs' claims that they should have been allowed to pursue their habeas petitions. "In an appeal from the denial of habeas relief, this court reviews a district court's findings of fact for clear error and issues of law *de novo.*" *Jeffers v. Chandler,* 253 F.3d 827, 830 (5th Cir. 2001) (per curiam). A district court's dismissal of a habeas corpus claim for failure to exhaust administrative remedies is reviewed for abuse of discretion. *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012).

A person seeking habeas relief must first exhaust available administrative remedies. *United States v. Cleto*, 956 F.2d 83, 84 (5th Cir. 1992) (per curiam). Exhaustion has long been a prerequisite for habeas relief, even where petitioners claim to be United States citizens. *See United States v. Low Hong*, 261 F. 73, 74 (5th Cir. 1919) ("A mere claim of citizenship, made in a petition for the writ of habeas corpus by one held under such process, cannot be given the effect of arresting the progress of the administrative proceeding

12

provided for."). "The exhaustion of administrative remedies doctrine requires not that only administrative remedies selected by the complainant be first exhausted, but instead that all those prescribed administrative remedies which might provide appropriate relief be pursued prior to seeking relief in the federal courts." *Hessbrook v. Lennon*, 777 F.2d 999, 1003 (5th Cir. 1985), *abrogated on other grounds by McCarthy v. Madigan*, 503 U.S. 140 (1992), *superseded by statute on other grounds*, *Woodford v. Ngo*, 548 U.S. 81 (2006); *see also Lee v. Gonzales*, 410 F.3d 778, 786 (5th Cir. 2005) ("[A] petitioner must exhaust available avenues of relief and turn to habeas only when no other means of judicial review exists.").

Conversely, "[e]xceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam) (quoting *Hessbrook*, 777 F.2d at 1003). The petitioner bears the burden to demonstrate an exception is warranted. *Id.* (citing *DCP Farms v. Yeutter*, 957 F.2d 1183, 1189 (5th Cir. 1992); *Gardner v. Sch. Bd. Caddo Par.*, 958 F.2d 108, 112 (5th Cir. 1992)).

This court has already applied these principles to §§ 1503(b)–(c), finding the procedures they outline must be exhausted before receiving habeas relief. Specifically, in *Samaniego v. Brownell*, 212 F.2d 891, 894 (5th Cir. 1954), this court noted that,

> [w]here, as here, Congress has provided a method, administrative or judicial, by which appellant may challenge the legality of his detention, or exclusion, and such method or procedure is not tantamount to a suspension of the writ of habeas corpus, this remedy must be exhausted before resort may be had to the extraordinary writ.

Nos. 17-40077 & 17-40134

Like the petitioner in *Samaniego*, Villafranca and Hinojosa have not pursued the remedies available to them under §1503(b)–(c). Nor have they demonstrated that such pursuit would be futile. They argue that they are not provided an effective remedy because the procedures do not specifically address the deprivation of their passports. But the denials were based on a finding that they were not citizens, which—as noted—is precisely the sort of claim that § 1503 is designed to address. In other words, these procedures provide a basis for the Plaintiffs to rectify the wrongful determination that they are not citizens, which, if they are successful, will afford the Plaintiffs an effective remedy to the wrong they suffered.

We also reject the Plaintiffs' assertions that the position of a § 1503(b) petitioner who appears at a port of authority with a certificate of identity is the same as any other alien seeking admission to the United States. To the contrary, the very fact that the petitioner has that certificate puts her in a different position. Section 1503(b) calls on the U.S. diplomatic or consular officer of the United States to issue the certificate of identity "upon proof . . . that the application is made in good faith and has a substantial basis." Thus, when individuals are issued a certificate of identity for purposes of applying for admission to the United States, a U.S. official has found some merit in their claims. Obtaining a certificate of identity signals to U.S. officials charged with evaluating applications for admission to the United States at a port of entry that an individual's claim may be legitimate. Accordingly, persons who have gone through the process set forth in § 1503(b) assume a legal posture that is distinct from persons who merely proceed to the inspection station and request entry.

14

Nos. 17-40077 & 17-40134

Thus, the Plaintiffs have not demonstrated that they are entitled to an exception to the exhaustion requirement.[3]

IV.

Last, we consider two arguments raised by Hinojosa and Villafranca individually, both of which we reject.

*A. Whether Villafranca may file a claim under 8 U.S.C. § 1503(a)*

We first address Villafranca's claim that she could file a declaratory judgment action under § 1503(a). The district court concluded that the claim relied on an interpretation of § 1503(a) that contravened its plain language. We review the district court's interpretation of the statute de novo, *United States v. Rasco*, 123 F.3d 222, 226 (5th Cir. 1997), and affirm.

As already noted, the procedures set forth at § 1503(a) and §§ 1503(b)–(c) apply to distinct circumstances. Section 1503(a) applies only to "person[s] . . . within the United States," 8 U.S.C. § 1503(a), while §§ 1503(b)–(c) refers to "person[s] . . . not within the United States," *id.* at § 1503(b). And, as discussed, §§ 1503(b)–(c) provide additional procedures for those "not within the country" to gain admission to the United States and thereby become "persons . . . within the United States" under § 1503(a). As the Supreme Court in *Rusk* observed, this additional procedure served Congress's legislative purpose: to provide extra vetting procedures for those coming into the country claiming citizenship. 369 U.S. at 376–79.

It is undisputed that Villafranca was at a port of entry to the country at the time the lawsuit was filed. She was not, in other words, "within the United States." *Cf. United States v. Montoya de Hernandez,* 473 U.S. 531, 539–40 (1985) (noting constitutional implications of the distinction between being "at

---

[3] In light of this conclusion, we need not consider whether the Plaintiffs have satisfied the requirement that they be "in custody" to file a habeas claim. *See Zolifcoffer v. U.S. Dep't of Justice*, 315 F.3d 538, 540 (5th Cir. 2003) (per curiam).

Nos. 17-40077 & 17-40134

the border" and being "in the interior"). Accordingly, the trial court properly dismissed her claim under § 1503(a).

*B. Hinojosa's As-Applied Constitutional Challenge*

Hinojosa brings an as-applied constitutional challenge to 8 U.S.C. § 1185(b),[4] which states, "it shall be unlawful for any citizen of the United States to depart from or enter, or attempt to depart from or enter, the United States unless he bears a valid United States passport." We reject her argument, affirming the district court's ruling that Hinojosa lacked the requisite standing to assert it.

To argue that a statute is unconstitutional as applied, one must demonstrate that the statute actually does apply to him or her. *McCullen v. Coakley*, 134 S. Ct. 2518, 2534 n.4 (2014) ("[A] plaintiff generally cannot prevail on an *as-applied* challenge without showing that the law has in fact been (or is sufficiently likely to be) unconstitutionally *applied* to him."). Hinojosa never asserts that § 1185(b) was applied to her. She never, for example, asserts that she was denied entry to the United States as a U.S. citizen lacking a passport. Nor could she make such an assertion: DOS concluded Hinojosa was *not* a citizen. Indeed, the propriety of this legal determination is the dispute around which this entire appeal turns. Whatever the constitutional ramifications of § 1185(b), they should not be reviewed here.

V.

The district court's orders in both cases are AFFIRMED.

---

[4] We note that Hinojosa's discussion of this point in her brief on appeal is unclear. At points, it seems to assert a facial constitutional challenge. She argues, for example, that 8 U.S.C. § 1185(b) is "unconstitutional[ ] to the extent it precludes the return to the United States of a U.S. citizen, simply because she lacks a U.S. passport." To the extent she asserts a facial challenge, however, we decline to consider it for the first time here. *See Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999).

Nos. 17-40077 & 17-40134

JAMES L. DENNIS, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from the majority opinion's decision to affirm the district court's dismissal of Hinojosa and Villafranca's APA claims. In my view, 8 U.S.C. § 1503(b)–(c) is not an adequate remedy for persons outside of the United States who do not seek admission to the country prior to a determination of citizenship. Hinojosa and Villafranca fall into that category of persons and should be entitled to APA review.

Individuals seeking APA review must establish that there is "no other adequate remedy in a court."[1]  5 U.S.C. § 704.  In evaluating the adequacy of an alternative remedy, courts must give the APA's "generous review provisions . . . a 'hospitable' interpretation." *Bowen v. Massachusetts*, 487 U.S. 879, 904 (1988) (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 140–41 (1967)).  "A restrictive interpretation of § 704 would unquestionably . . . run counter to" the APA's purpose of "remov[ing] obstacles to judicial review of agency action." *Id.* at 904 (quoting *Shaughnessy v. Pedreiro,* 349 U.S. 48, 51 (1955)).  An alternative that "carr[ies] the risk of 'serious criminal and civil penalties,'" or that imposes a process that is "arduous, expensive, and long" and does not aid in the determination of the underlying legal question, is inadequate. *U.S. Army Corps of Eng'rs v. Hawkes Co.,* 136 S. Ct. 1807, 1815–16 (2016) (quoting *Abbott Labs.,* 387 U.S. at 153).

---

[1] The APA provides that judicial review is available for "final agency action[s] for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  Although the majority opinion declines to consider whether § 704's finality requirement is met in the instant cases, *Rusk v. Cort*, 369 U.S. 367, 372 (1962) *abrogated in part by Califano v. Sanders*, 430 U.S. 99, 105 (1977), expressly found that the denial of a passport application in that case was a "final administrative determination by the Secretary of State."  As discussed below, *Rusk*'s conclusions with respect to this issue remain good law.

17

In *Hawkes*, three companies sought APA review to challenge a determination by the Army Corps of Engineers that their land contained "waters of the United States," such that the Clean Water Act prohibited discharging pollutants onto the land without a permit. 136 S. Ct. at 1811–12. The Corps proposed two alternatives to seeking APA review: the first, to discharge material without a permit and risk an enforcement action; the second, to apply for a permit to discharge and seek judicial review in the event a permit was denied. *Id.* at 1815–16. The Supreme Court held that these alternatives were inadequate, focusing on the significant costs each imposed on the companies. *Id.* The Court held that risking an enforcement action was not an adequate remedy because of the "serious criminal and civil penalties" the companies could incur. *Id.* at 1815. The Court also held that the permitting process was not an adequate remedy because it imposed an "arduous, expensive, and long" process that required the companies to complete expensive land assessments that did not necessarily aid in the determination of whether their land contained "waters of the United States." *Id.* at 1815–16.

Analogous to the proposed alternatives in *Hawkes*, § 1503(b)–(c) would impose onerous requirements at a significant cost if required of individuals seeking a declaration of citizenship from outside of the United States. *See id.* Section 1503(c) requires that persons who obtain a certificate of identity under § 1503(b) travel to a United States port of entry and apply for admission within two months.[2] And, as Hinojosa and Villafranca argue and the Government

---

[2] *See* 22 C.F.R. § 50.11 ("A person applying abroad for a certificate of identity under section 360(b) of the Immigration and Nationality Act shall complete the application form prescribed by the Department."); U.S. DEP'T OF STATE, FS-343, APPLICATION FOR CERTIFICATE OF IDENTITY (2006) (requiring travel to a port of entry in the United States "within two months" of the issuance of a certificate of identity).

does not dispute, persons who comply with this requirement and travel to a port of entry still face the risk of burdensome proceedings under the Immigration and Nationality Act (INA), including detention during the pendency of their applications and, if their applications for admission are ultimately denied, removal.[3]  *See* 8 U.S.C. 1503(c) ("Any person described in this section who is finally denied admission to the United States shall be subject to all the provisions of this chapter relating to aliens seeking admission to the United States"); 8 U.S.C. § 1225 (providing for the inspection, detention, and removal of persons applying for admission).

These additional burdens would be imposed on all persons located outside of the United States,[4] regardless of whether they wished to enter the

---

[3] Although persons may initiate habeas corpus proceedings under § 1503(c) upon a final determination of inadmissibility by the Attorney General, this option is not an adequate remedy in a court to challenge the State Department's denial of a passport.  *See Sackett v. EPA*, 566 U.S. 120, 127 (2012) (applying for a permit with one agency and seeking judicial review if that permit is denied is not an "adequate remedy" that precludes APA review of an already-existing action from another agency).

[4] Justice Brennan's concurrence in *Rusk* further highlights the substantial burdens § 1503 imposes on persons located outside of the United States:

If [§ 1503(b)–(c)] provided the sole avenue to judicial review for one who while abroad is denied a right of citizenship, the following consequences would result: He would have to apply for a certificate of identity, which would be granted only if an administrative official was satisfied that the application was made in good faith and had a substantial basis. If the certificate were initially denied, an administrative appeal would have to be taken. If that failed, an attempt might be made to secure judicial review. A holding that no such review is available would mean that one who admittedly had been a citizen would have been conclusively converted into an alien without ever having gained access to any court. On the other hand, if review were forthcoming at this stage, and if issuance of a certificate were ordered, the individual would have gained only the right to travel to a United States port of entry—if he could afford the passage—there to be "subject to all the provisions of this chapter relating to the conduct of proceedings involving aliens seeking admission to the United States." He would, in other words, have to submit to detention as an alien although it is assumed that he was once a citizen and no court had ever determined that he had been expatriated. Should he still encounter an administrative denial of the right to enter, he would finally get into court, but

19

United States prior to seeking a determination of citizenship, or at all.[5] Worse still, it is not apparent that this process ultimately aids in a determination of citizenship. If persons are approved at each step, seeking relief through § 1503(b)–(c) ultimately results in their admission into the United States, where they can then bring an action for declaratory judgment under § 1503(a). Thus, the process that § 1503(b)–(c) imposes leads only to a determination of admissibility. Under § 1503, the courts still make the ultimate determination of citizenship, but only after an "arduous, expensive, and long" process, *Hawkes,* 136 S. Ct. at 1815, that does not necessarily address the underlying legal question of citizenship. *See* § 1503(b) (an applicant is entitled to a certificate of identity "[u]pon proof to the satisfaction of [a] diplomatic or consular officer that [her] application is made in good faith and has a substantial basis"); § 1503(c) (the Attorney General makes a final determination of whether a person is "entitled to admission"); *see also Bensky v. Powell*, 391 F.3d 894, 896 (7th Cir. 2004) (persons traveling to the United States to comply with § 1503(c) may be entitled to remain in the United States on a basis other than citizenship). Accordingly, persons located outside of the United States who seek a citizenship determination before entering the

---

"in habeas corpus proceedings and not otherwise," with whatever limitations upon the scope of review such language may imply.

369 U.S. at 381–82 (Brennan, J., concurring).

[5] As Hinojosa notes, a United States passport entitles the holder to benefits beyond entry into the United States, including international travel benefits. *See, e.g.*, U.S. DEP'T OF STATE, *Smart Traveler Enrollment Program (STEP)*, TRAVEL.STATE.GOV, https://travel.state.gov/content/travel/en/international-travel/before-you-go/step.html (last visited Apr. 10, 2018) (discussing safety information and assistance available to United States citizens while traveling abroad); U.S. DEP'T OF STATE, *Country Information*, TRAVEL.STATE.GOV, https://travel.state.gov/content/travel/en/international-travel/International-Travel-Country-Information-Pages.html (last visited Apr. 10, 2018) (discussing visa requirements for holders of United States passports in foreign countries).

country would risk "serious criminal and civil penalties" if required to comply with § 1503(b)–(c), and would be forced to undertake a process that is "arduous, expensive, and long" and that does not necessarily aid in the determination of their citizenship. *See Hawkes*, 136 S. Ct. at 1815–16.

Section 1503(b)–(c) therefore appears to present precisely the sort of "obstacles to judicial review" that the APA's "generous review provisions" were enacted to remove. *See Bowen,* 487 U.S. at 904. I therefore conclude that § 1503 does not provide an adequate remedy in a court whenever a person outside the United States seeks a determination of citizenship before, or without, seeking admission. *See Hawkes*, 136 S. Ct. at 1815–16*; Bowen*, 487 U.S. at 904. Both Hinojosa and Villafranca seek a determination of their citizenship before entering the United States. Section 1503(b)–(c) is therefore not an adequate remedy and thus does not preclude them from seeking APA review.[6]

I also write separately to note that, in my view, *Rusk v. Cort*, 369 U.S. 367 (1962), remains good law with respect to its interpretation of § 1503(b)–(c). Nothing in *Califano v. Sanders*, 430 U.S. 99 (1977), or any subsequent Supreme Court case, suggests otherwise. In *Califano*, the Supreme Court considered whether the courts had jurisdiction under the APA to review a social security benefits decision by the Secretary of Health, Education, and Welfare. *Id.* at 100–01. The *Califano* Court held that, following Congress's

---

[6] The majority opinion appears to suggest that § 1503(b)–(c) would provide an adequate remedy for any person whose path to judicial review is "less treacherous" than that of the plaintiff in *Rusk*, who risked incarceration upon arrival to the United States. In my view, the threat of incarceration, or a burden of similar magnitude, is not necessary for § 1503(b)–(c) to be deemed inadequate. *See, e.g., Hawkes*, 136 S. Ct. at 1815. But, in any event, Hinojosa and Villafranca have demonstrated that the path to judicial review under § 1503(b)–(c) is as "treacherous" as that of the plaintiff in *Rusk* in every meaningful respect.

decision to amend 28 U.S.C. § 1331 and eliminate its amount-in-controversy requirement in certain cases, the APA could no longer be interpreted as an independent grant of subject matter jurisdiction. *Id.* at 105.

Hinojosa and Villafranca do not argue that the APA independently confers subject matter jurisdiction. Instead, they assert jurisdiction under § 1331 and look to the APA to provide a cause of action and waiver of sovereign immunity. *See Bowen*, 487 U.S. at 891 (considering whether review was proper under the APA with jurisdiction asserted under § 1331). Because *Califano*'s reference to *Rusk* was confined to the issue of whether the APA confers subject matter jurisdiction,[7] *Rusk*'s construction of § 1503 remains good law. Accordingly, § 1503 does not create an exclusive remedy for persons outside the United States who do not seek to enter the country prior to obtaining a declaration of citizenship.[8]

---

[7] The Court referenced *Rusk* within the following context:

Three decisions of this Court arguably have assumed, with little discussion, that the APA is an independent grant of subject-matter jurisdiction. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410 (1971); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141 (1967); *Rusk v. Cort*, 369 U.S. 367, 372 (1962). . . . The obvious effect of [Congress's] modification [of § 1331], subject only to preclusion-of-review statutes created or retained by Congress, is to confer jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate. We conclude that this amendment now largely undercuts the rationale for interpreting the APA as an independent jurisdictional provision.

*Id.* at 105.

[8] The majority opinion misapprehends the significance of *Rusk*'s discussion of the legislative history of § 1503. In the portion of *Rusk* that the majority opinion cites, the *Rusk* Court found that Congress enacted § 1503 to prevent non-citizens from "gain[ing] fraudulent entry to the United States by prosecuting spurious citizenship claims." 369 U.S. at 379. However, the Supreme Court further explained that Congress enacted § 1503 as a replacement for § 503 of the Nationality Act of 1940. *Id.* Under this predecessor statute, individuals were permitted physical entry into the United States to prosecute their citizenship claims, and many non-citizens entered the country and disappeared into the general population. *Id.* at 375–79. In the instant cases, Hinojosa and Villafranca seek a declaration of citizenship before attempting to gain admission to the United States. They

Nos. 17-40077 & 17-40134

Hinojosa and Villafranca have demonstrated that § 1503(b)–(c) does not provide them an adequate remedy in a court for purposes of precluding APA review. For these reasons, I respectfully dissent from the majority's opinion with regard to their APA claims.

---

therefore do not fall into the category of persons that Congress sought to prevent from "gain[ing] fraudulent entry to the United States." *See id.* at 379.